BICKNELL, appellant, v. BICKNELL.

*Will — undue influence — evidence.*

A testator left surviving him a widow and a son by a former marriage. By his will he gave all his property, amounting to $5,330, to his widow, except a legacy of $25 to his son, and one of like amount to the widow of a deceased son. It was shown that the testator was a man of strong will and decided character and determined to have his own way ; that his wife and son were not on good terms, and she had, on some occasions, complained of her treatment by the son in the presence of testator, and had also declared her belief that the son was dishonest in his dealings with testator. It was also shown that the will was drawn under testator's directions, and his wife was not present at the time; that his mind was clear, and that he gave at the time satisfactory reasons for the disposition made of his property, viz. : That the son had more property than he himself had ; that the deceased son's widow had friends that would take care of her; that he had no more property than he ought to leave to his wife ; that his wife had been kind to him and prolonged his days, etc. It was shown, also, that testator had expressed himself as dissatisfied with the conduct of his son to himself and wife, and had, shortly before his death, stated such conduct as one of the reasons for the provisions of the will.

*Held,* that there was no evidence of undue influence on the part of the wife ; that no inference of such influence could be drawn from the complaints made by her concerning the son's conduct ; nor could such an inference be drawn in such a case as this, from the fact that the wife was the donee of the whole estate ; and that the will was entitled to admission to probate.

APPEAL from decree of a surrogate, admitting a will to probate. The facts sufficiently appear in the opinion.

*Tappan & Erwin,* for appellant.

*Parker & McIntyre,* for respondents.

Bicknell v. Bicknell.

PARKER, J. This is an appeal from the decree of the surrogate of the county of St. Lawrence, admitting to probate the will of Richmond Bicknell, deceased.

The will was executed December 2, 1870. The testator died April 28, 1871, at the age of about eighty years, leaving surviving him his widow, Keziah Bicknell, the respondent, and one son by a former marriage, the appellant. Three other children of testator, by such former marriage, had died before the death of testator, leaving no issue.

After the death of testator's first wife he married the said respondent, in the year 1855, with whom he had lived from that time to the time of his death, without issue.

By his will he gave to Sarah Bicknell, the widow of a deceased son, $25, and to the appellant the same sum, and the residue of his property, both real and personal, to his widow, the respondent, and appointed her the executrix of his will.

His estate consisted of the homestead where he died, valued at $2,500; a store worth $600; a pasture lot worth $480; and personal property of the value of $1,750, in all $5,330.

The will was presented to the surrogate by the respondent, for probate, on the 12th day of May, 1871. The proper citation was issued, returnable on the 29th day of May, 1871, upon which day the proponent appeared to prove the will, and the above-named appellant appeared to contest such probate. Testimony was then, and afterward, upon adjournments from time to time, taken, and, upon the 4th day of March, 1872, the surrogate made and entered his decree, admitting the will to probate.

From such decree this appeal is brought.

No question is made in respect to the formal execution of the will, nor as to the testamentary capacity of the testator; but it is claimed that the will was procured by the undue influence of the proponent.

After a careful reading of all the testimony I do not discover such proof of the fact, which the contestant sought thereby to establish, as seems to me sufficient to warrant a reversal of the decree. On the contrary, I am strongly impressed with the conviction that it is extremely improbable that the proponent did induce, or could have induced, the testator to dispose of his property in any way not originating with himself.

The testimony very clearly shows that the testator was, up to the

day of his death, a man of strong will and very decided character — seldom, if ever, giving up to another, and always determined to have his own way. In the language of the contestant's witness, John S. Thompson, "He was always a man of peculiar traits of disposition, and was regarded as a peculiar man. He was considered a pretty strong-willed and stubborn man." Another of contestant's witnesses, James W. Culver, said of him, "He was always a very strong-willed man, and determined to have his own way; he had singular notions; I always regarded him as a man who was conscientious and meant to do what was right, from his own stand-point. * * * I discovered no change except the natural wearing down of old age. The singularities I speak of have always existed as long as I knew him. * * * The effect of the decay of his mental powers seemed to intensify his peculiarities." There is no testimony in conflict with that which goes to establish for him such a character, but the whole evidence tends strongly to confirm it, and lead the mind to the conclusion that he was not a man likely to be influenced in his opinion or his acts by others, but rather, one likely to adopt his course of action from reasons satisfactory to himself, regardless of the views or wishes of others.

That he acted in conformity to this trait of his character, in making the will in question, is also, I think, quite evident from the testimony.

It appears that he had made two wills previously — one some four or five years before and the other a year or two before. There is no distinct proof of the contents of those wills, but it seems that the second one, which is also spoken of as a codicil, was more favorable to his widow, the proponent, than the first, but less favorable to her than the one in question. It also seems that he had subsequently destroyed this second will or codicil. Between the making of the second will and the one in question, his son Richmond, Jr., had died, leaving a widow, but no issue. The widow is one of the respondents here.

It also appears from the evidence that the two sons of the testator, contestant and Richmond, Jr., were not pleased with their father's marriage with the proponent, and that between her and contestant particularly, there had not been, at any time, a very kindly feeling; and it is alleged by contestant, that she took pains to prejudice his father against him, with the object of inducing him to leave his property to her rather than to contestant. It is shown

that she complained, from time to time, that contestant had always, since she came there, misused and abused her; that on one occasion she said, "she had always tried to treat them kindly, and told Mr. Bicknell not to mind what they did or said; but that she had become so disgusted with their abuse, or that Hosea had carried things to such an extent, that she should do so no longer, but should let him (deceased) see them in their true light. That Hosea would see that he had been fighting against himself, or working against his own interest in doing as he had."

She also said that " there had been a time when she did not expect Mr. Bicknell would provide for her any more than the law required, but that Mr. Bicknell did not feel as he did when he made his will, or before Richmond's death; and that it was right and lawful that she should try and see to it that she was provided for, else, if she should survive him and be left at Hosea's mercy, she would fare hard."

And that, on another occasion, she said "he (contestant) had treated her in every respect like a dog; that the time was coming when he would find there was one woman smart enough for him, and she would come out unscathed from all his abuse."

It is also shown that proponent at times, in testator's presence, spoke of contestant's dishonesty in his dealings with testator, and endeavored to prevent him from dealing at contestant's store, and that on one occasion testator did, at some inconvenience, go to another store, more distant from his residence, to purchase what he could as well have procured of contestant; also, that testator himself, on some occasions, declared contestant dishonest.

It appears also that proponent usually wrote decedent's letters and contracts, and transacted much of his business — attended him at home and when he went from home, and was generally the only occupant with him of his house. That she worked with him in the fields. That she knew the contents of the first will, and was dissatisfied with it, and was dissatisfied that the second one or codicil was destroyed. That she knew of the making of the will in question, having by decedent's direction written for the scrivener who drew it, to come and do so, though not present when it was drawn or executed, and that its contents were immediately afterward made known to her.

From all these facts and opportunities it is inferred by contestant that proponent did excite and awaken in the mind of testator, pre-

judices against contestant, whereby he was cut off by the will in question from any participation in testator's property, except the $25 therein bequeathed to him.

If the testator had been a man of weak and irresolute character, or enfeebled by disease, and had been possessed of a large or considerable estate, which he had given to his widow to the exclusion of others having claims upon and need of his bounty, the circumstances relied upon by contestant, might, perhaps, have been sufficient to create a strong suspicion that the testator had been induced so to dispose of his property by undue influence brought to bear upon him by his wife.

But in this case the testator, as we have seen, was a man not likely to be influenced by others in the disposition of his property, and was not, when the will was made, enfeebled by sickness. Nor does it appear that whatever dissatisfaction he may have had with his son, the contestant, the same was excited by the proponent. The evidence shows that he had independent reasons for such dissatisfaction in the treatment of himself by contestant, and it sufficiently appears that the complaints of proponent that he had illtreated her were not groundless. The property of the testator was not large, the whole of it being, by no means, an unreasonable amount for the support of the widow; while the contestant, the only other person entitled to claim any part of it, was a well-to-do and prosperous man, having no family but his wife, with whom he had lived seventeen years without issue, and possessed of property, some of which he had received from his father, worth more than double the value of his father's estate.

The disposition of testator's property, as made by the will, seems a very reasonable and just one; such an one as would be expected under all the circumstances from a reasonable and just man. The reasons which the testator himself gave to the scrivener, who drew the will at the time when it was drawn, for directing it to be drawn as it was, seem to me just and satisfactory, and the testimony of the scrivener tends strongly to rebut the allegation that he was operated upon by prejudice, or any undue influence in the making of his will, or that he was in a condition to be so operated upon.

The witness testified as follows: " Mr. Bicknell and myself only were present when I drew the will; deceased gave me the directions as to how it should be drawn, and I drew it according to those directions; I remained there probably an hour or two ; I had no other

Bicknell v. Bicknell.

business but to draw the will; he gave me the directions and I drew it; deceased seemed to go a little lame; I supposed he was a little lame or infirm; as to clearness of mind, he appeared as he always had to me ; was a person of very decided opinions ; expressed himself very readily and intelligently; told me he wished to have his will drawn over again, and I drew it as he directed me to; I noticed nothing that seemed peculiar or unnatural in him.   *   *   *

During the interview he remarked that *Hosea, his son, was well enough off, and that Richmond's widow was well enough off, and had friends that would take care of her, if necessary ; and that he had concluded to give his property mainly to his widow.*   I had drawn two wills for deceased before this one.   I think he produced one of these wills that day that was witnessed by Mr. and Mrs. Hemenway. Mrs. Bicknell did not see the will while I was there.   She was not in the room.   The doors of the room were shut while I was writing. I remember deceased going to shut the door, but I don't recollect his locking it," and on his cross-examination, he said, "at the last interview drawing the will, deceased said *that he had made up his mind to leave his property to his wife ; that Hosea was better off and had more property than he had ; that his property had been growing less, and expenses higher, and that he had no more property than he ought to leave to his wife.*"   He also said to this witness, at the time when the will was drawn, that " his wife had been better than a doctor to him, and had prolonged his days [alluding to a sickness which he had about two years before] that she had given him medicine which had been of more consequence to him than the doctor's, and that she deserved his property."

To other witnesses he expressed his sense of his duty to give his property to his wife, in view of the fact that she would need it all, and that contestant would not need any of it, having already more than he, the testator, had, and living in expectancy of receiving more from an aunt.

It is true that the testator, shortly before his death, when under the influence of disease, gave to Hemenway, who was a subscribing witness to the will, another reason for cutting off contestant, which he states as follows:

"He said to me, ' I want you to tell Hosea, when the will is opened, if he asks any questions why the will is so and so, that I have willed him what I have in addition to what I have given him

before, and the reason why the will is as it is, is because of his conduct to me and my wife.' "

If this reason, in fact, operated upon him when he made the will it by no means appears that it was a *prejudice* induced by the influence of proponent. As already remarked the evidence shows that testator had reason, or thought he had reason, to complain of contestant's conduct, in reference to himself as well as to his wife, and he had repeatedly expressed his dissatisfaction with his son on that account, and for causes of complaint which must have come under his own observation.

But in the face of his declaration at the time when the will was made, and at various other times, that he ought in justice to his wife, and in view of the fact that his son was well enough off, to give all he had to his wife, it is difficult to believe that the moving cause to such disposition of his property was in fact any other than he so declared, and what he said to Hemenway does not necessarily conflict with it. But for contestant's manifest want of proper feeling toward proponent, the testator might have been willing to trust his widow's support and comfort somewhat to the good offices of his son, which he was unwilling to do in view of his conduct referred to.

It is not improbable that the proponent did make known to him her views in regard to the propriety of his devoting his entire property to her support and maintenance in the event that she should survive him, and deprecate the being left in any respect subject to the good will or discretion of contestant, and very likely testator was influenced by her wishes in this respect. But I do not understand or infer from the whole case, that she used any secret or improper means to influence his mind against his son. Her complaints of contestant's treatment of her, as they do not appear to have been unreasonable, cannot be charged as unduly influencing the testator against him. Whatever she had to say against him, so far as appears, she said openly in the presence of others, manifestly under the influence of wounded feelings, and not from a desire to injure him in the estimation of testator — such is the impression I have received from the whole testimony in the case.

The will, in this case, is not unnatural or unreasonable, it is just and meritorious. This is not a case where the inference of undue influence can be drawn from the fact that proponent is the donee of the whole estate; such fact of undue influence is to be found, in

such a case as this, not by showing opportunity and interest merely, but positive acts of the party charged. *Seguine* v. *Seguine*, 3 Keyes, 665; *Clapp* v. *Fullerton*, 34 N. Y. 190; *Gardiner* v. *Gardiner*, id. 155, 161, 162; *Tyler* v. *Gardiner*, 35 id. 559, 594, 595.

It is to be remembered that, even if the proponent did urge upon testator her claims to the whole property in preference to contestant, in view of her relations and services to testator, of her destitution, independently of his bounty, of the existing unpleasant relations between contestant and herself, and the unfitness and inhumanity of leaving her in any degree dependent upon him, and if testator was thereby induced to make the will as he did, this was not undue influence. These considerations the wife might properly urge upon her husband, and any influence which they exerted upon him was entirely legitimate. 1 Redf. on Wills, 530–534.

In *Seguine* v. *Seguine*, *supra*, Judge WRIGHT, in delivering the opinion of the court, said, "Undue influence must be an influence exercised by coercion, imposition or fraud. It must not be such as arises from the influence of gratitude, affection or esteem, but it must be the ascendancy of another will over that of the testator, whose faculties have been so impaired as to subject him to the controlling influence of force, imposition or fraud. Moreover, the exertion of the influence upon the very act must be proved, and it will not be inferred from opportunity and interest."

In regard to cases like the one at bar, the rule thus stated is, I think, in all respects accurate and applicable.

The evidence in this case comes far short of proving undue influence exerted by proponent upon the mind of the testator, under which the will in question was made.

I am of the opinion, therefore, that the decree of the surrogate, admitting it to probate, should be affirmed, without costs to either party.

MILLER, P. J., and POTTER, J., concurred.

*Decree affirmed.*